IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY FREITAS<br><br>    Plaintiff,<br><br>    v.<br><br>DELTA FAMILY-CARE DISABILITY AND SURVIVORSHIP PLAN,<br><br>    Defendant. | CIV-S-05-994 DFL PAN<br><br>MEMORANDUM OF OPINION<br>AND ORDER |

    Plaintiff Timothy Freitas ("Freitas") brings this action against defendant Delta Family-Care Disability and Survivorship Plan (the "Plan") for long-term disability benefits.

I.

    The Plan is a non-contributory employee welfare benefit plan as defined in 29 U.S.C. § 1002(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (Pl.'s Response to DSUF ¶ 1.)  It provides long-term disability benefits, as well as other benefits, to non-pilot Delta Air Lines employees.  (Id.)  The Administrative Committee ("Committee") is the Plan administrator and the named fiduciary.  (Id.)  The

1

Committee delegated the initial determination of disability to Aetna Life Insurance Company ("Aetna"). (Def.'s Mot. for Summ. J. at 4.)

Under the terms of the plan, if Aetna denies a claim for long-term disability benefits, the claimant may appeal that decision. (Id. at 5.) The claimant's first appeal is to Aetna. If Aetna denies the appeal, the claimant may then appeal to the Committee. (Id.)

Section 4.03 of the plan defines the criteria for long-term disability benefits:

> the Employee shall be eligible for Long Term Disability provided he is disabled at that time as a result of demonstrable injury or disease . . . which will continuously and totally prevent him from engaging in any occupation whatsoever for compensation or profit, including part-time work.

(Arpin Decl. Ex. B at 29.) Until February 6, 2003, Freitas worked as a customer service agent for Delta Air Lines. (Pl.'s Response to DSUF ¶ 9.) On February 19, 2003, Freitas told Aetna that he had been diagnosed with a spinal tumor. (Pl.'s Response to DSUF ¶ 10.) Freitas had developed multiple myeloma, a particularly aggressive form of cancer. (Id.) Over the next sixth months, Freitas was hospitalized a number of times and received radiation and chemotherapy treatments. (Id.) On June 5, 2003, Freitas began receiving long-term disability benefits. (Pl.'s Response to DSUF ¶ 11.) On June 1, 2004, the Plan ended Freitas's long-term disability payments. (Def.'s Response to PSUF ¶ 14.)

On May 19, 2004, Freitas appealed the denial of long-term disability benefits. (Arpin Decl. Ex. C at 192.) On August 24, 2004, Aetna upheld the denial of Freitas's long-term disability benefits. (Id. at 254-56.) On November 20, 2004, Freitas appealed the denial of these benefits to the Committee. (Id. at 64.) On April 6, 2005, the Plan informed Freitas that the Committee had upheld the denial of his claim for long-term disability benefits. (Id. at 7-12.) Because the Plan requires a claimant to be continuously disabled to receive long-term disability, the Committee did not find relevant reports stating that Freitas was disabled after June 1, 2004. (Id.)

Freitas moves for summary judgment arguing that he is entitled to long-term disability benefits. In its cross motion for summary judgment, the Plan argues that its decision to uphold the denial of benefits was not an abuse of discretion.

## II.

### A. Standard of Review

#### 1. Whether the Plan has Discretionary Authority

The Plan administrator's decision to deny or terminate benefits under an ERISA plan is reviewed "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948 (1989). "When the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits, that

3

determination is reviewed for abuse of discretion." Gatti v. Reliance Standard Life Ins. Co., 415 F.3d 978, 981 (9th Cir. 2005) (citations omitted).

The Plan argues that the benefit plan grants its Committee discretionary authority in reviewing Freitas's claim. (Def.'s Mot. at 11.) Section 12.02 of the plan states:

> The Administrative Committee shall have the broadest discretionary authority permitted under law in the exercise of all of its functions including, but not limited to, deciding questions of eligibility [and] interpretation . . . .

(Arpin Decl. Ex. A at 55.) A number of courts have found that this language grants the Plan discretionary authority. See Turner v. Delta Family-Care Disability and Survivorship Plan, 291 F.3d 1270, 1273-74 (11th Cir. 2002); Delta Family-Care Disability and Survivorship Plan v. Marshall, 258 F.3d 834, 837 (8th Cir. 2001); Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1451-53 (11th Cir. 1997); see also Madden v. ITT Long Term Disability Plan, 914 F.2d 1279, 1284 (9th Cir. 1990) (finding a plan that stated "[the administrator] shall have the exclusive right . . . to interpret the Plan and to decide any all matters arising hereunder" to be subject to the abuse of discretion standard). Because the plan explicitly vests the Committee with the power to determine eligibility for benefits, the court reviews the Committee's decision for abuse of discretion, unless Freitas can show that one of the two exceptions discussed below applies in this case.

2. Freitas's Arguments for De Novo Review

4

Freitas argues that the court should review the Committee's denial of long-term benefits under a de novo standard for two reasons: (1) the Plan did not issue a timely decision on Freitas's appeal; and (2) the Plan directed the reviewing doctor to deny Freitas's claim. (Pl.'s Mot. at 11.)

### a. Untimely Decision on Appeal

Freitas argues that the court should review the Committee's denial de novo because the Plan failed to issue a timely decision on Freitas's appeal. (Pl.'s Mot. at 11.) It appears that the Plan may have violated some of the ERISA timing regulations. See 29 C.F.R. section 2560.503-1(i). However, even if the Plan violated those regulations, it does not result in de novo review.

Prior to an amendment in 2000, the ERISA regulations included a sixty-day time limit for making a decision on review, which could be extended to 120 days.[1] See Gatti, 415 F.3d at 981-82. If the administrator failed to make a decision within those time limits, the claim was "deemed denied on review." Id. The Ninth Circuit has only addressed procedural violations of the ERISA regulations prior to the 2000 amendment. Id. at 982 (holding that where the plan administrator fails to comply with the time limits set forth in former § 2560.503-1(h), the

---

[1] The amendment shortens the time allowed for initial responses to forty-five days (from sixty) and removes the language that says that violations of the time limitations will result in the claim being "deemed denied." 29 C.F.R. § 2560.503-1(f)(3). The alterations apply to claims filed on or after January 1, 2002. See 65 Fed.Reg. 70,246; 29 C.F.R. § 2560.503-1(o). Because the pre-amendment regulation does not apply here, Freitas's argument is even more difficult to make.

5

plaintiff is entitled to deem administrative remedies exhausted, but not entitled to de novo review because "violations of the time limits established in 29 C.F.R. § 2560.503-1(h) are insufficient to alter the standard of review"); <u>Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Protection Plan</u>, 349 F.3d 1098, 1105-06 (9th Cir. 2003) (deciding "only that where the plan itself provides that a particular procedural violation results in an automatic decision rather than one calling for the exercise of the administrator's discretion, that provision is as enforceable as the provision giving the administrator discretionary authority under other circumstances").

    Neither <u>Gatti</u> nor <u>Jebian</u> applies to this situation.  Here, neither the benefits plan, nor the ERISA regulations contain the deemed denied language.  In addition, neither the Plan nor Freitas treated the appeal as "deemed denied."  Rather, it is clear from the Plan's continuing contact with Freitas - - indeed, the Plan asked both for additional information and notified him that it needed additional time to address his initial appeal - - that the Plan exercised judgment in making its decision.  Therefore, even assuming that the Plan violated certain ERISA timing regulations, the court rejects Freitas's argument that it should therefore apply a de novo standard of review.

        <u>b. Influence on Reviewing Physician</u>

    Freitas also argues that the court should apply de novo review because the Plan influenced the decision of a reviewing

6

physician. (Pl.'s Mot. at 12.) Freitas claims that this action was improper, but he does not explain why.

Freitas appears to contend that the Plan breached a fiduciary duty. See <u>Futamura v. Unum Life Ins. Co. of Amer.</u>, 305 F.Supp.2d 1181, 1189 (W.D. Wash. 2004) (analyzing alleged pressuring of a reviewing physician as a conflict of interest). If the Plan encouraged a reviewing physician to deny Freitas's claim, then it acted in conflict with Freitas's interest in receiving a fair appeal. Therefore, the court addresses this argument under the case law for conflict of interest.

The claimant has the burden to show a serious conflict of interest. <u>Jordan v. Northrop Grumman</u>, 370 F.3d 869, 875 (9th Cir. 2003). To make this showing, the claimant must demonstrate more than the simple fact that the insurer has an interest which conflicts with the award of benefits. <u>Id.</u> Instead, the claimant must present "material, probative evidence . . . tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary." <u>Atwood v. Newmont Gold Co.</u>, 45 F.3d 1317, 1323 (9th Cir. 1995). If the claimant produces such evidence, then a rebuttable presumption arises that the insurer breached a fiduciary duty. <u>Tremain</u>, 196 F.3d at 976.

Freitas bases his argument on seven e-mails between three Plan employees: (1) Dr. Susan Northrup (the reviewing physician); (2) Dorinda Smith; and (3) Suzanne M. Arpin (Secretary of the Committee of Delta Air Lines, Inc.). (See Arpin Decl. Ex. C at

7

29-31.) Freitas argues that Arpin and Smith told Dr. Northrup what to say in order to deny the claim. (Pl.'s Mot. at 12.) Freitas notes that Dr. Northrup's final paragraph in the denial letter incorporated suggestions from Arpin and some language Smith wrote. (Pl.'s Opp'n at 7.) Because these employees of the Plan helped Dr. Northrup draft her opinion, Freitas claims that they advocated the denial of his claim in breach of a fiduciary duty. (Pl.'s Mot. at 12.)

However, these e-mails do not meet the showing required to shift the burden to the Plan. The first e-mail shows that Dr Northrup had already determined that Freitas could perform some work on June 1, 2004. In the subsequent e-mails, Arpin and Smith encourage Dr. Northrup to expand on her analysis because a one line opinion would most likely not hold up under review. Their suggestions to Dr. Northrup to include specific information about the drugs Freitas used addresses the lack of analysis in the opinion, not the opinion itself. This does not show that the Plan breached a fiduciary obligation to Freitas. Therefore, the court rejects Freitas's argument to apply a de novo standard of review based on a conflict of interest.

B. Freitas's Evidence and Declaration

The Plan moves to strike Freitas's declaration and exhibits. (Def.'s Mot. to Strike at 2.) The Plan argues that because these items contain information outside the administrative record, the court cannot consider them. (Id.)

"The abuse of discretion standard permits the district court

8

to 'review only the evidence presented to the [plan] trustees.'" Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471 (9th Cir. 1993) (quoting Jones v. Laborers Health & Welfare Trust Fund, 906 F.2d 480, 482 (9th Cir. 1990)). However, a court may consider evidence outside the administrative record "to determine if a plan administrator's decision was affected by its conflict of interest." Tremain v. Bell Industries, Inc., 196 F.3d 970, 977 (9th Cir. 1999).

The evidence presented by Freitas includes documents that are not in the administrative record. In addition, Freitas includes statements in his declaration without a citation to the administrative record. (See, e.g., Freitas Decl. ¶ 16.) Because Freitas does not argue that the evidence outside the record shows a conflict of interest, the court GRANTS the Plan's motion to strike Freitas's declaration and exhibits.

C. Review under Abuse of Discretion

This is a sad case. There is no question that plaintiff suffers from a severe form of cancer and that he has been unable to return to his former employment. There is also no question that he has been totally unable to work during different periods of time after February 2003. However, unfortunately for plaintiff, the long term disability benefits provided under the terms of the plan are limited and unavailable even to someone as sick as plaintiff. In this circumstance, it becomes the unpleasant duty of the court to apply the terms of the plan, howsoever harsh and limited.

9

Under the abuse of discretion standard, the court "can set aside the administrator's discretionary determination only when it is arbitrary and capricious." Jordan, 370 F.3d at 875. The Ninth Circuit has held "that a decision 'grounded on any reasonable basis' is not arbitrary or capricious, and that in order to be subject to reversal, an administrator's factual findings that a claimant is not totally disabled must be 'clearly erroneous.'" Id. (citations omitted).

An ERISA administrator abuses its discretion only if it: (1) renders a decision without explanation; (2) construes provisions of the plan in a way that conflicts with the plain language of the plan; or (3) relies on clearly erroneous findings of fact. Bendixen v. Standard Ins. Co., 185 F.3d 939, 944 (9th Cir. 1999); Atwood, 45 F.3d at 1323-24. "[T]he abuse of discretion standard permits the district court to 'review only the evidence presented to the [plan] trustees.'" Taft, 9 F.3d at 1471 (quoting Jones, 906 F.2d at 482).

The Committee framed the issue on review as: "whether, as of June 1, 2004, Mr. Freitas was disabled as a result of his conditions to the extent that he would be continuously and totally prevented from engaging in any occupation whatsoever for compensation or profit including part-time work." (Arpin Decl. Ex. C at 8.) It based its decision on section 4.03 of the plan which defines the eligibility for long- term disability: "the Employee shall be eligible for Long Term Disability provided he is disabled at that time as a result of demonstrable injury or

10

disease . . . which will continuously and totally prevent him from engaging in any occupation whatsoever for compensation or profit, including part-time work." (Arpin Decl. Ex. B at 29.)

The Plan cites a number of letters from Freitas's treating physicians stating that his health was improving and that he was no longer disabled. First, the Plan cites a January 12, 2004 letter from Dr. Kim stating "we feel at this point, the patient will not be able to return to his previous job as lifting and assisting in heavy lifting tasks. However, we think that he is capable to be retrained for a lighter job in the same field." (Arpin Decl. Ex. C at 224.) Second, the Plan cites a January 27, 2004 letter from Dr. Rodler and Dr. Wun stating that "the patient was seen by Dr. Kim of Neurosurgery recently who said the patient should not engage in any heavy lifting in the future. This will impact on the patient's job since he previously was involved in heavy lifting at the airport. We have submitted papers on his behalf to see if his job can be revised in the future so that he will still be able to work." (Id. at 229-300.) Third, the Plan cites a March 25, 2004 letter from Drs. Rodler and Wun that states Freitas "reports he is feeling extremely well." (Id. at 241.) In addition, the two doctors state "he has been advised not to do any heavy lifting and not to engage in any work which requires lifting more than 10 pounds." (Id.) This evidence is persuasive. In multiple reports, Freitas's doctors give their opinion that he can return to some kind of work.

Based on the numerous medical opinions stating that Freitas

could return to work, the Plan presents sufficient evidence that it did not abuse its discretion in upholding the denial of Freitas's disability benefits to shift the burden to Freitas.  In response Freitas has failed to show that the Plan: (1) rendered a decision without explanation; (2) construed provisions of the plan in a way that conflicts with the plain language of the plan; or (3) relied on clearly erroneous findings of fact.  Therefore, the court DENIES Freitas's motion for summary judgment and GRANTS the Plan's motion for summary judgment.

## III.

For the reasons stated above, the court: (1) GRANTS the Plan's motion for summary judgment; and (2) DENIES Freitas's motion for summary judgment.  The clerk shall enter judgment.

IT IS SO ORDERED.

Dated: May 12, 2006

_____
DAVID F. LEVI
United States District Judge